# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEITH M. FULLER | ) | |
| | ) | Civil Action No. 12-1001 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | District Judge McVerry |
| AT&T | ) | Chief Magistrate Judge Lenihan |
| | ) | |
| Defendant. | ) | ECF No. 26 |

## REPORT AND RECOMMENDATION

### I.  RECOMMENDATION

It is respectfully recommended that the Motion for Summary Judgment filed by

Defendant AT&T at ECF No. 26 be denied.

### II.  REPORT

A.  Facts

Plaintiff, Keith Fuller ("Plaintiff" or "Fuller") filed this lawsuit against his former

employer, AT&T Mobility Services, LLC ("AT&T") pursuant to the Family Medical Leave Act

("FMLA").[1]  Fuller complains that AT&T interfered with his right to family medical leave in

violation of 29 U.S.C. § 2615(a)(1), and fired him in retaliation for invoking his family medical

leave rights in violation of 29 U.S.C. § 2615(a)(2).[2]  (ECF No. 1.)

Unless otherwise indicated, the following facts are undisputed and taken from the parties'

Statements of Material Facts and responses thereto at ECF Nos. 28, 32, 34 and 39.

---

[1] Defendant states that the proper defendant is "AT&T Mobility Services, LLC," not "AT&T." (Def.'s Br. Supp.
Mot. Summ. J., ECF No. 27 at 6.)  The caption of the case has not been amended.
[2] The parties dispute whether Fuller actually exercised his rights, or merely attempted to exercise his rights.

AT&T hired Fuller as a Retail Sales Consultant in March 2008. (ECF Nos. 28 & 32 at ¶ 1.) Most recently, he worked at an AT&T retail store in downtown Pittsburgh. (ECF Nos. 34 & 39 at ¶ 1.) As a Retail Sales Consultant, he sold phones, accessories, and mobile services. (ECF Nos. 34 & 39 at ¶ 2.) The parties appear to agree that Fuller was characterized as an AT&T Mobility employee.

When Fuller began working at the downtown Pittsburgh store, the store manager was Rebecca Alcantara ("Alcantara") . (ECF Nos. 28 & 32 at ¶ 7.) Alcantara accepted a company severance package in December 2010 and left AT&T. (ECF Nos. 28 & 32 at ¶ 7.) Linda Pryce ("Pryce") replaced Alcantara as the store manager. (ECF Nos. 28 & 32 at ¶ 7.) Carmine Mataranzzo ("Mataranzzo") was the assistant manager at the downtown Pittsburgh store from 2008 until October 2011. (ECF Nos. 34 & 39 at ¶ 9.)

In late June or early July 2010, Fuller notified his co-workers and managers that his wife was pregnant with their first child. (ECF Nos. 34 & 39 at ¶ 13.) At the time that he notified his managers about the pregnancy, Fuller was not in jeopardy of losing his job for disciplinary or performance issues. (ECF Nos. 34 & 39 at ¶ 14.) Fuller was aware that under the FMLA, he could take time off to be with his newborn baby. (ECF Nos. 34 & 39 at ¶ 17.) On May 26, 2010, he sent an email to the AT&T Human Resources One Stop ("HR One Stop") requesting information about FMLA leave. (ECF Nos. 34 & 39 at ¶ 17.) According to Plaintiff, the HR One Stop email response did not explain the procedure for requesting FMLA leave. (ECF No. 32 at ¶ 26.) Instead, the HR One Stop response referred Fuller to the Care of Newborn Leave of Absence policy for AT&T. (ECF Nos. 34 & 39 at ¶ 18.)

According to AT&T's Associate Director of FMLA Operations, Joseph Atilano ("Atilano"), the procedure for a Mobility employee in retail sales to request FMLA leave is to

submit the request through the AT&T Mobility Centralized Payroll Change Assistance ("MCPCA") website.  (Atilano Dep., ECF No. 35 at 38.)  The MCPCA department completes the FMLA-1 form and provides a copy to the employee.  (ECF No. 28 at ¶ 26.)[3]

The record does not reflect any further discussions concerning Fuller's FMLA leave requests during the summer of 2010.

In September or October 2010, Fuller told Alcantara that he planned on taking FMLA leave following the birth of his child. (ECF Nos. 34 & 39 at ¶ 26.) The parties agree that Alcantara informed Fuller about the AT&T FMLA website and Fuller reviewed the website. (ECF Nos. 28 & 32 at ¶ 32.)

The parties disagree about what else Alcantara instructed Fuller to do.  Fuller states that Alcantara instructed Fuller to submit the FMLA request to her.  (ECF No. 34 at ¶ 27.)  Fuller asserts that based on this instruction, he submitted an FMLA leave request via email to Alcantara.  (ECF No. 34 at ¶ 28.)  When Fuller followed up with Alcantara, she told him it was still too early to submit the request, because he was requesting time off in January.  (ECF No. 34 at ¶ 30.)

Alcantara disagrees with Fuller's recollection of the FMLA conversations.  Alcantara states that Fuller never emailed her about his desire to take FMLA leave.  (ECF No. 39 at ¶ 29.) According to her, when they spoke about FMLA leave, she instructed him to submit his request through the AT&T FMLA website. (ECF No. 39 at ¶ 27.)

After Alcantara accepted a severance package and left AT&T, Fuller asserts that he sent the new store manager, Pryce, an email requesting FMLA leave for the birth of his son. (ECF

[3] At ECF No. 28 at ¶ 29, AT&T states that "the employee is required to give notice to his supervisor at least 30 days in advance of the need for foreseeable leave...", citing Atilano's Deposition at pp. 21-24. After careful review of these cited pages, the Court notes that Atilano only testified that when "an employee is out ill...or out for an FMLA-qualifying event, one of the first things they would do is notify their supervisor that they're out sick." Atilano does not discuss a requirement to notify the supervisor 30 days in advance of the need for foreseeable leave.

No. 34 at ¶ 31.)  He followed up the email with a verbal request for FMLA leave.  (ECF No. 34 at ¶ 31.)  Fuller testified that Pryce denied his request for FMLA leave and stated, "we all have children[] we want to spend time with, this is a retail job." (ECF No. 34 at ¶ 32.)

Pryce remembers having a conversation with Fuller, but denies telling him he could not take FMLA leave for the birth of his son.  (ECF No. 39 at ¶ 32.)  Pryce recalls instructing Fuller to contact the AT&T FMLA office to ensure he could get the FMLA leave he wanted. (ECF No. 39 at ¶ 34.)

Despite the disagreements about what Pryce told Fuller to do, the parties agree that Fuller called the AT&T human resources department and spoke to a customer care manager, Debra Castillo ("Castillo").  (ECF Nos. 34 & 39 at ¶ 35.)  Castillo told Fuller to submit an FMLA leave request to his supervisor.  (ECF Nos. 34 & 39 at ¶ 35.)  Based on the instructions from the human resources department, Fuller recalls sending a second email to Pryce to request FMLA leave.  (ECF No. 34 at ¶ 36.)  Pryce does not recall ever receiving an email from Fuller about FMLA leave.  (ECF No. 39 at ¶ 36.)  Pryce does not have any emails from January 2011 because her computer was wiped out. (ECF No. 39 at ¶ 38.)  Further, the in-store computers that employees used to email management are not saved or backed up. (ECF No. 39 at ¶ 39.)

Fuller asserts that after Pryce denied his second FMLA leave request, he requested three days of paid time off for the birth of his child at the end of January and one week of vacation from February 7 to February 11, 2011.  (ECF No. 34 at ¶ 42.)  Pryce granted these requests and Fuller took paid time off from January 26 to January 28, 2011.  (ECF No. 28 at ¶ 39.)  On January 27, 2011, Fuller's son was born.  (ECF No. 34 at ¶ 51.)

Shortly after his birth, Fuller's son became ill and was hospitalized at the Children's Hospital of Pittsburgh ("Children's Hospital") from January 30, 2011 to February 5, 2011.  (ECF

Nos. 34 & 39 at ¶¶ 53-54.) Fuller states that he was scheduled to work January 30 to February 5. (ECF No. 34 at ¶ 54.) According to Fuller, he called into work every day of the hospitalization and spoke to assistant manager Mataranzzo to specifically request time off under the FMLA. (ECF No. 34 at ¶ 55.) Mataranzzo testified that he could not recall Fuller calling into the store to report that he could not come into work because his son was hospitalized. (ECF No. 39 at ¶ 55.) Mataranzzo further testified that he does not remember Fuller specifically asking if he could take time off of work under the FMLA. (ECF No. 39 at ¶ 55.) Likewise, Pryce testified that she was not aware of any phone calls from Fuller between January 30, 2011 and February 5, 2011. (ECF No. 39 at ¶ 55.) When he returned to work on February 14, Fuller asserts he provided Pryce and Mataranzzo with a Parent Release Form issued by Children's Hospital documenting that he was present at Children's Hospital from January 30, 2011 to February 5, 2011. (ECF No. 34 at ¶ 57.) Pryce agrees that Fuller brought a Parent Release Form into work on February 14, 2011, but denies that Fuller needed to provide documentation because his absence was a pre-approved vacation, not FMLA leave. (ECF No. 39 at ¶ 57.) AT&T attendance records reflect that Fuller was on vacation from February 7 to February 11, 2011; the records do not reflect that he was on vacation from January 30 to February 5, 2011. (ECF No. 35 at 199-200.)

When Fuller returned to work on February 14, 2011, he was called into a meeting with Store Manager Pryce, Assistant Store Manager Mataranzzo, and Union Representative Logan Lockhart ("Lockhart"). (ECF Nos. 34 & 39 at ¶¶ 73-74.) At the meeting, Fuller was fired. (ECF Nos. 34 & 39 at ¶ 73.)

Pryce informed Fuller that he was being discharged because the company received an anonymous customer survey about Fuller's unfriendly customer service. (ECF Nos. 34 & 39 at ¶ 75.) The customer survey included a customer comment "More friendly to Asian." (ECF Nos.

34 & 39 at ¶ 76.)  Although AT&T had previously reviewed store surveillance videos to corroborate negative customer surveys, no one made an effort to corroborate this customer survey or determine what "More friendly to Asian" meant.  (ECF Nos. 34 & 39 at ¶ 79.)

Pryce provided Fuller with additional documentation displaying his prior history of disciplinary actions and poor customer satisfaction numbers.  (ECF Nos. 34 & 39 at ¶¶ 81-82.) Fuller's prior disciplinary record included a written warning issued on October 13, 2010 and a final written warning issued on October 22, 2010.  (ECF No. 28 at ¶¶ 12 & 15.) Fuller disputes that AT&T management ever informed him about the October 13 or October 22, 2010 written warnings. (ECF No. 32 at ¶¶ 13 & 15.)

Based on the October 22, 2010 final written warning and Fuller's poor Retail Sales Success Measures ("RSSM") numbers for December, Pryce states she could have terminated Fuller in January.  (ECF No. 28 at ¶ 21.)  She granted him an exception, because she was concerned that at the time he did not understand his job was in jeopardy.  (ECF No. 28 at ¶ 22.)

After Fuller was discharged, union representative Lockhart filed a grievance contesting Fuller's termination.  (ECF Nos. 34 & 39 at ¶¶ 88-89.) During a discussion of the grievance, Lockhart remembers "[Pryce] briefly talking about…[Fuller's] attendance issues at work." (Lockhart Dep., ECF No. 35 at 178.)  Pryce also told Lockhart "[January] was a bad time, and that they were short staffed, and it was chaotic."  (Lockhart Dep., ECF No. 35 at 178.)  Pryce testified that the store was understaffed in January, February, and March 2011, for a number of reasons including the following: one employee was out on leave, another employee was approved for a two-week vacation, another employee had quit, and another employee was on FMLA leave for a disability but never returned to work.  (ECF No. 39 at ¶ 49.)

B.  Legal Standard

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact; that is, the movant must show that the evidence of record is insufficient to carry the non-movant's burden of proof.  *Id.*  Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a *genuine issue for trial*" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.  *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis added by *Matsushita* Court).  An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty-Lobby, Inc*., 477 U.S. 242, 248 (1986).  In *Anderson*, the United States Supreme Court noted the following:

> [A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.  . . . [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id.* at 249-50 (internal citations omitted).

C.  Analysis

The purpose of the FMLA is "to balance the demands of the workplace with the needs of families." 29 U.S.C. § 2601(b)(1).  The FMLA entitles an eligible employee to "a total of 12 workweeks of leave during any 12-month period" for "the birth of a son or daughter" or "[i]n order to care for … a son [or] daughter" in the event of a "serious health condition." 29 U.S.C. § 2612(a)(1) (A) & (C).  A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital . . . or (B) continuing treatment by a health care provider."  29 U.S.C. § 2611(11); *see also* 29 C.F.R. § 825.114 (defining inpatient care as "an overnight stay in a hospital").

In order to "accommodate the legitimate interests of employers," the FMLA imposes requirements upon the employee to properly notify their employer about the requested FMLA leave.  29 U.S.C. § 2601(b)(3).  When the requested leave is foreseeable, "the employee shall provide the employer with not less than 30 days' notice . . . of the employee's intention to take leave." 29 U.S.C. § 2612(e)(1).  When the requested leave is unforeseeable, "an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a) (2011).

After an employee has invoked his or her FMLA rights, an employer cannot "interfere with, restrain, or deny the exercise of or the attempt to exercise" these rights. 29 U.S.C. § 2615(a)(1).  An employer is also unable to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful under [the FMLA]." 29 U.S.C. § 2615(a)(2). The former establishes the statutory basis of a claim of unlawful "interference" and the later the claim for "retaliation." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294,

301 (3d Cir. 2012). The Department of Labor regulations prohibit employers from considering the use of "FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." 29 C.F.R. § 825.220(c) (2011). Because the employer cannot use FMLA leave as a negative factor in disciplinary actions, "an employee does not need to prove that invoking FMLA rights was the sole or most important factor upon which the employer acted." *Lichtenstein*, 691 F.3d at 301.

When an employer terminates an employee for a valid FMLA request, the employer's actions may "constitute interference with the employee's FMLA rights as well as retaliation against the employee." *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009). Fuller asserts AT&T both interfered with his FMLA rights and retaliated against him for invoking his FMLA rights.

1. Interference

In order to make out an interference claim under the FMLA, a plaintiff must establish the following: (1) the employee was entitled to the benefits, and (2) the employer blocked the employee from using them. *See Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005).

FMLA regulations balance the interests of employees and employers by imposing obligations on the employee to provide notice about FMLA leave as stated above. The employer is authorized to require employee's to "comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.302(d) (2010). The employer's obligations include an "expect[ation] to responsively answer questions from employees concerning their rights and responsibilities under the FMLA." 29

C.F.R. § 825.300(c)(5) (2010). In a dispute over an employee's adequacy of notice, the issue is generally a question of fact. *Lichtenstein*, 691 F.3d at 304.

AT&T argues that the procedure for Mobility Retail Sales employees to request FMLA leave was "straightforward." (Def.'s Br. Supp. Mot. Summ. J., ECF No. 27 at 30.) The HR One Stop website states there are three steps for "Requesting FMLA for Mobility Employees." (ECF No. 27 at 29.) Step one is "Report your FMLA Requests to the MCPCA." (ECF No. 27 at 29.) Next, the MCPCA office fills out the initial paperwork, the FMLA-1 form. (ECF No. 27 at 30.) After the employee submits the supporting documentation, FMLA operations determine whether to grant the FMLA request. (ECF No. 27 at 30.) However, the Frequently Asked Questions ("FAQ"), upon which AT&T relies, state it is the responsibility of the supervisor, not the employee, to submit FMLA-1 paperwork through the MCPCA. (Atilano Dep., ECF No. 28-1 at 66.) ("The supervisor should submit the FMLA-1 on the employee's behalf upon their return to work so a begin and end date may be provided.") The FAQ says nothing about the employee's responsibility to access the MCPCA web portal.[4]

AT&T quotes the FAQ for its assertion that the employee must provide notice to his supervisor. (ECF No. 27 at 32.) The FAQ states, "The employee must provide the supervisor with at least 30 days advance notice if the leave is foreseeable." (ECF No. 27 at 32.) AT&T concludes that the procedure requires the employee to (1) "give notice to his supervisor at least 30 days in advance" and (2) "make application for FMLA by providing the relevant information through the MCPCA web portal." (ECF No. 27 at 33.) Atilano testified, however, that AT&T has two different procedures for FMLA requests. (ECF No. 28-1 at 49.) One procedure is for

---

[4] There are inconsistencies in the record as to whether the FAQs apply to the Mobility employees at all. Atilano testified that he "believe[d]" they applied to Mobility employees, but the FAQs appear to apply to non-Mobility employees. (ECF No. 28-1 at 55.) For example, the answer to the question about an employee's requirement to give notice to his or her supervisor is identical to the non-Mobility employee requirement in step one of "Employee Responsibilities when Requesting FMLA." (ECF No. 28-1 at 61; ECF No. 28-1 at 66.)

Mobility employees and the other is for all other employees. According to Atilano, Mobility employees do not have to notify their supervisor before contacting MCPCA.[5] Moreover, Atilano explained that the process is different for Mobility employees, who submit their applications directly to MCPCA, in order to relieve the burden on supervisors. (ECF No. 28-1 at 47.)

Consequently, the record reflects a disputed issue of material fact as to what Fuller was required to do to invoke his FMLA rights under AT&T internal procedures. Clearly, an employee could be confused by the requirement to contact both the supervisor and the MCPCA portal. It is undisputed that when Fuller contacted the AT&T FMLA office in order to understand the procedure, the human resources office told him to submit an FMLA leave request to his supervisor, not the MCPCA portal. (ECF Nos. 34 & 39 at ¶ 35.) It is also undisputed that Fuller notified Store Managers Alcantara and Pryce that he wanted to take FMLA leave. (ECF Nos. 34 & 39 at ¶ 13; No. 39 at ¶ 34.) A reasonable factfinder could conclude that Fuller gave AT&T sufficient notice, but due to AT&T's conflicting instructions about its FMLA procedures, AT&T refused to acknowledge these requests. Relatedly, although the regulations require Plaintiff to comply with Defendant's "usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances," the record reflects sufficient ambiguity in those requirements to raise a genuine issue of fact as to whether this ambiguity would excuse Plaintiff's compliance. *See* 29 C.F.R. § 825.302(d). As noted above, disputes relating to an employee's adequacy of notice are generally questions of fact for the jury. *Lichtenstein,* 691 F.3d at 304.

---

[5] [Fuller's Attorney]: Okay. So in Exhibit 3, it looks like the first step is to notify your supervisor or delegated manager about your need for [FMLA] leave. That's AT&T 671 [ECF No. 28-1 at 61.]
[Atilano]: Okay.
[Fuller's Attorney]: That's what that says, but you're telling me that your understanding would be that's not something that would be followed by a Mobility employee. They would have to go right to MCPCA?
[Atilano]: Correct." (ECF No. 28-1 at 50.)

AT&T also argues that Fuller requested leave that was not required by the FMLA. (ECF No. 27 at 41.) Under the FMLA regulations, intermittent leave after the birth of a child is only available "if the employer agrees." 29 C.F.R. § 825.120(b). An employer, however, has a responsibility to "notify the employee of the employee's eligibility to take FMLA leave…absent extenuating circumstances." 29 C.F.R. § 825.300(b)(1). The United States Court of Appeals for the Third Circuit has commented that the notice requirement is important because it "ensure[s] that employers allow their employees to make informed decisions about leave." *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 144 (3d Cir. 2004) (quoting with approval *Nusbaum v. CB Richard Ellis, Inc.*, 171 F. Supp.2d 377, 386 (D.N.J. 2001)). An informed employee can decide how to properly structure leave in a way that is protected by the FMLA. *Id.*

AT&T concedes that Fuller notified Alcantara and Pryce about the upcoming birth of his son, but argues that Fuller requested leave that was not protected by the FMLA. (Def.'s Reply Brief, ECF No. 38 at 3.) AT&T observes that Fuller was "confused about the type and duration of leave to which he was entitled under the FMLA." (ECF No. 38 at 2.) AT&T argues that store managers Alcantara and Pryce notified Fuller that he was unable to take intermittent leave under the FMLA. Despite telling Fuller he could not take intermittent leave under the FMLA, the managers failed to explain how he could structure his leave in a way that is protected by the FMLA. Instead, Pryce told Fuller to contact MCPCA and the MCPCA office could explain how to take FMLA leave. The parties agree that when Fuller contacted the MCPCA office, the human resources representative told him to contact his supervisor about FMLA leave. The record does not reflect that AT&T fulfilled its obligation to notify Fuller about how to structure his leave in a way that is protected by the FMLA. *See Nusbaum*, 171 F. Supp.2d at 387 ("[T]he overall scheme of the FMLA clearly anticipates that an employer will be in the best position to

advise its employees about its own leave policy and how that policy functions along with or extends the requirements of the FMLA."), *cited with approval in*, *Conoshenti*, 364 F.3d at 144. Viewing the facts in the light most favorable to Fuller, genuine issues of material fact exist as to whether AT&T fulfilled its duty to notify Fuller about how to structure his leave in a way that is protected by the FMLA.

The record also reflects evidence of Fuller emailing human resources about the procedure to take one month off of work to be with his newborn son. (ECF Nos. 34 & 39 at ¶ 17.) The response to Fuller's email inquiry directed Fuller to the Care of Newborn Leave policy, a company policy that allows intermittent leave. (Atilano Dep., ECF No. 35 at 67.) Drawing all inferences in favor of Fuller, AT&T responded to Fuller's request for FMLA information with a company policy that permits intermittent leave, not with information about how to utilize FMLA. A reasonable factfinder could conclude that AT&T failed to provide Fuller with the opportunity to make an informed decision about his leave options under the FMLA. *See Conoshenti*, 364 F.3d at 144.

Finally, AT&T argues that Fuller received the time off he requested. (ECF No. 27 at 45.) AT&T contends that because he received time off, Fuller suffered no prejudice or any real impairment of his rights. (ECF No. 27 at 47-48.) To prevail under the FMLA, 29 U.S.C. § 2617 requires an employee to suffer some prejudice by the violation. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002). Fuller claims AT&T discharged him from his position because of his FMLA request. (Pl.'s Br. Opp'n Def.'s Mot. Summ. J., ECF No. 33 at 18.) Whether Fuller was fired for his FMLA request is a disputed issue of material fact and, if true, is sufficiently prejudicial to support the cause of action. Section 2617 specifically grants monetary

damages for lost "wages, salary, employment benefits" and equitable relief including "reinstatement." 29 U.S.C. § 2617(1).

In light of all of the above, a genuine factual dispute exists with respect to whether Fuller provided AT&T with sufficient notice and whether AT&T blocked Fuller from utilizing his FMLA leave.

2. Retaliation

In order to make out a claim for retaliation under the FMLA, a plaintiff employee must show the following: (1) invocation of the employee's right to FMLA-qualifying leave, (2) a subsequent adverse employment decision, and (3) the adverse employment decision was causally related to the employee's invocation of the right. *Lichtenstein*, 691 F.3d at 302. FMLA claims based on circumstantial evidence are analyzed using the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973), burden-shifting framework. *Lichtenstein*, 691 F.3d at 302. Under the *McDonnell Douglas* framework, Fuller can establish a prima facie case of retaliation by pointing to evidence in the record that creates a genuine factual dispute about "(a) invocation of an FMLA right, (b) termination, and (c) causation." *See Lichtenstein*, 691 F.3d at 302. If Fuller can establish a prima facie case, the burden shifts to AT&T to provide a "legitimate, non-discriminatory" reason for discharging Fuller. *See id.* If AT&T provides a non-discriminatory reason for the termination, the burden shifts to Fuller to point to evidence from which a factfinder could reasonably disbelieve AT&T's reason for discharging Fuller. *See id.* Fuller must show, not simply that the defendant's articulated business reason was wrong, "but that it was so plainly wrong that it cannot have been the employer's real reason." *See Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997). AT&T concedes Fuller has

established the first two elements of the *McDonnell Douglas* test. (ECF No. 27 at 49.) The third element, causation, is in dispute.

"When the temporal proximity between the protected activity and adverse action is unduly suggestive, this is sufficient standing alone to create an inference of causality and defeat summary judgment." *Lichtenstein*, 691 F.3d at 307. (citations and internal quotations omitted). Fuller asserts he took unforeseeable FMLA leave from January 30 to February 5, 2011. (ECF No. 34 at ¶ 57.)[6] Pryce made the decision to terminate Fuller three days after his first day of FMLA protected leave. (ECF No. 28 at ¶ 44; ECF No. 35 at 245.) When Fuller returned to work on February 14, he was terminated. Although the Third Circuit Court of Appeals has not recognized a bright line rule of what constitutes sufficient temporal proximity, the law is clear that three days is in the realm of what is considered sufficient at the prima facie stage. *Lichtenstein*, 691 F.3d at 307 (finding seven days unduly suggestive); *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (finding two days unduly suggestive).

If the temporal proximity alone is not suggestive enough, Fuller offers the testimony of union representative, Lockhart. (ECF No. 33 at 21.) Lockhart testified that although attendance was not formally included in Fuller's termination paperwork, the AT&T manager told him that Fuller had attendance issues at work. (Lockhart Dep., ECF No. 35 at 178.) AT&T maintains that because Pryce granted Fuller paid time off and vacation time, it is unreasonable to conclude there was any antagonism to Fuller's desire to take leave. (ECF No. 27 at 51.) At the time, Pryce was a new store manager who had taken over her new duties during the busiest time of the year in the retail business. A reasonable factfinder could conclude Pryce was unhappy that in addition to his scheduled vacation, Fuller took seven days of unscheduled FMLA leave. Pryce

---

[6] For purposes of the retaliation analysis, the Court distinguishes between the foreseeable FMLA leave invoked by Plaintiff before the birth of his son, and the unforeseeable FMLA leave Fuller invoked three (3) days after the birth when his son became ill.

disputes that Fuller's time off from January 30 to February 5, 2011 was unscheduled FMLA

leave. She asserts that Fuller was on a pre-approved vacation. (ECF No. 39 at ¶ 54.) The

AT&T attendance record does not reflect that Fuller was on vacation when his son was

hospitalized. (ECF No. 35 at 200.) Also, the prior store manager, Alcantara, stated she never

informed Pryce that Fuller was already approved for vacation the first two weeks of February.

(ECF No. 34 at ¶ 44.) AT&T argues that Fuller admitted in his deposition that he was on

preapproved vacation from January 30 to February 5, 2011. (ECF No. 27 at 47.) A closer

reading of Fuller's deposition indicates that the record is unclear on this point; Fuller could have

been referring to his preapproved vacation from February 7 to February 11, 2011.

For the above reasons, the Court concludes that Fuller has presented sufficient evidence

to establish a prima facie case of causation. This evidence, when drawing all reasonable

inferences in Fuller's favor, is sufficient for a fact-finder to conclude: (1) Pryce's decision to

terminate Fuller was triggered by his January 30, 31 and February 1 absences; (2) Pryce knew

Fuller was on FMLA leave, not a pre-scheduled vacation; (3) Pryce mentioned Fuller's

attendance issues to Lockhart because Pryce had considered Fuller's FMLA leave as a "negative

factor" that further justified Fuller's termination; and (4) after Pryce's successful efforts to

thwart Fuller's attempts to invoke foreseeable FMLA leave, she retaliated against him when he

invoked unforeseeable FMLA leave when his son became ill.

Because Fuller has established a prima facie case of retaliation, the burden shifts to

AT&T to provide a non-discriminatory reason for discharging Fuller. *Lichtenstein*, 691 F.3d at

302. The employer's burden of providing a non-discriminatory reason for the employee's

discharge is a "relatively light burden." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).

AT&T points to Fuller's poor sales performance and disciplinary problems as the reason for

discharging him.  (ECF No. 28 at ¶ 43.)  According to AT&T, Fuller received a written warning on October 13, 2010 for poor customer service, and a final written warning on October 22, 2010 for losing a Blackberry phone. (ECF No. 28 at ¶¶ 12 & 15.)  Fuller's poor sales performance numbers placed him in the bottom ten percent of the area retail manager's district.  (ECF No. 28 at ¶ 20.)  AT&T asserts the final event that led to the decision to terminate Fuller was the receipt of a negative customer survey for a transaction that occurred on January 22, 2011.  The customer survey contained a "no" response to a question about friendliness and courtesy.  (Menster Dep., ECF No. 28-1 at 233.)  The survey also contained a customer comment "More friendly to Asian."  (ECF No. 28-1 at 233.)  AT&T has met its burden of production by articulating non-discriminatory reasons for Fuller's termination.

AT&T's nondiscriminatory reason for discharging Fuller shifts the burden to Fuller to point to some evidence from which a factfinder could reasonably disbelieve AT&T's legitimate reasons.  *See Lichtenstein*, 691 F.3d at 309-10.  "[T]he plaintiff cannot simply show that the employer's decision was wrong or mistaken." *See Fuentes*, 32 F.3d at 765 (citations omitted).  Plaintiff has the burden to "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence."  *Id.* (internal quotations and citations omitted) (emphasis in original).

Fuller offers several pieces of evidence that cast doubt on AT&T's nondiscriminatory reasons.  First, Fuller asserts that when Pryce denied his original FMLA request in late November or early December 2010, she told him, "we all have children[] we want to spend time with, this is a retail job." (Fuller Dep., ECF No. 35 at 91-92.)  The United States Court of Appeals for the Third Circuit has instructed that certain factors determine whether remarks are

probative of discrimination. The considerations include "the speaker's position in the organization, the content and purpose of the statement, and the 'temporal connection between the statement and the challenged employment action.'" *Hodczak v. Latrobe Specialty Steel Co.*, No. 11-1085, 2011 WL 5592881, at *2 (3d Cir. Nov. 17, 2011) (quoting *Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 133 (3d Cir. 1997)). Discriminatory remarks made by individuals within the chain of decisionmakers who have the authority to discharge are far more probative of discrimination than those made by individuals outside the chain of decisionmakers. *See Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 521 (3d Cir. 1997) (citations omitted).

Pryce was the first manager in a chain of decisionmakers who approved Fuller's termination. (Menster Dep., ECF No. 28-1 at 233.) Her statement, if true, is far more probative of discrimination than other AT&T employees outside the chain of decisionmakers. The alleged statement was made two months before Fuller was terminated. If the factfinder were to believe Pryce made this statement, it would reflect the new manager's attitude toward FMLA leave. Although Pryce denies she made the statement, a reasonable factfinder could conclude the statement is evidence of her hostility toward employees taking time off for FMLA leave. This statement, along with other circumstantial evidence in the record, could allow a reasonable factfinder to conclude that Pryce acted with an unlawful motive, rather than for the articulated business reasons.

Second, Pryce took over as store manager during a difficult time for the store. Alcantara had abruptly left and Pryce was in charge of a store that was "extremely short-staffed" in January, February, and March 2011. (Pryce Dep., ECF No. 35 at 263.) Part of the staffing problem was another employee, Jeff Crawford, who was on FMLA leave from December 17, 2010 until April 2011. (Hannah Dep., ECF No. 35 at 142.) During this difficult time for the

store, Fuller was terminated and his attendance issues were not offered as an official reason for his termination. Lockhart testified, however, that Pryce mentioned to him that Fuller had attendance issues at work. (Lockhart Dep., ECF No. 35 at 178.) She also told Lockhart that January was a bad time because the store was short-staffed. (ECF No. 35 at 178.) This inconsistency undermines Pryce's proffered reason for discharging Fuller. Fuller's attendance was not offered as an official reason for his termination, yet Lockhart testified that Pryce mentioned Fuller had attendance issues at work. A factfinder could reasonably conclude from the record that the Defendant's articulated reasons for Fuller's discharge are a pretext for its true reason, Fuller's invocation of his FMLA rights.

Third, although AT&T management corroborated all of Fuller's *prior* disciplinary incidents, AT&T never investigated or attempted to confirm the last customer survey. AT&T argues that the survey was problematic because the customer answered "no" to the question "Was the rep friendly and courteous?" (ECF No. 27 at 23.) The customer survey also contained the comment "More friendly to Asian." (ECF No. 27 at 23.) According to Lockhart, "the company [] based a lot of what happened off of that single comment." (ECF No. 35 at 176.) Yet, Fuller was never given an opportunity to explain the situation and the company never confirmed that the event occurred. (ECF Nos. 34 & 39 at ¶¶ 78-79.) While the court does not sit "as a super-personnel department that reexamines an entity's business decisions," the court does determine whether a reasonable factfinder can rationally find it implausible that AT&T would corroborate all prior misconduct, but not investigate this misconduct. *See Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995). Specifically, when Fuller was disciplined on October 13 and October 22, AT&T management reviewed video footage of the store and corroborated the events before disciplining Fuller. On October 4, 2010, Alcantara received a

negative customer survey about Fuller's performance. (Fuller Dep., ECF No. 35 at 118.) Before disciplining Fuller, Alcantara and Hannah reviewed the store video and spoke with the customer to confirm the interaction was worthy of a disciplinary action. (Alcantara Dep., ECF No. 35 at 16.) When a Blackberry phone went missing on September 11, 2010, Alcantara reviewed the store video to confirm Fuller was responsible for losing the phone before she issued him a final written warning. (ECF No. 35 at 120.) When the customer survey came in on January 26, 2011, there was no corroboration. This inconsistency could lead a reasonable factfinder to conclude that the proffered reason for Fuller's termination was pretext.

Fuller has raised genuine issues of material fact from which a reasonable jury could conclude that he was terminated because he invoked his FMLA rights. Although AT&T has come forward with legitimate business reasons for Fuller's termination, Fuller has provided evidence demonstrating inconsistencies and implausibilities in AT&T's proffered reasons. Viewing the evidence in the light most favorable to Fuller, the Court concludes that a reasonable jury could find that the reasons offered by AT&T for terminating Fuller's employment were not its true reasons, but rather, a pretext for retaliation against Fuller for invoking his FMLA rights. Thus, AT&T's Motion for Summary Judgment should be denied.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Motion for Summary Judgment filed by Defendant AT&T at ECF No. 26 be denied.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule of Court 72.D.2., the parties are allowed fourteen (14) days from the date of service

to file objections to this report and recommendation.  Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto.  Failure to file timely objections will constitute a waiver of any appellate rights.


Dated: December 13, 2013                                        BY THE COURT:




_____
LISA PUPO LENIHAN
Chief United States Magistrate Judge


cc:
       All Counsel of Record
       Via Electronic Mail